Frederick C. Fiechter et al., Appellants *v.* Zoning Hearing Board of Pennsbury Township and Harold H. Lewis, Jr., Appellees.

Argued December 15, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*John S. Halsted, Gawthrop, Greenwood & Halsted,* for appellants.

*William J. Gallagher,* with him *Michael G. Louis, MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd.,* for appellee/intervenor.

OPINION BY JUDGE MACPHAIL, April 4, 1983:

Appellants[1] have brought this appeal from a decision and order of the Court of Common Pleas of Chester County which affirmed the order of the Zoning Hearing Board (Board) of Pennsbury Township granting the application of Harold H. Lewis, Jr. for a special exception to operate a portion of his gasoline service station as a mini-market.[2]  We reverse.

The property in question in this case is located in the Township's AR Zone.  The use of the property as a service station is as a nonconforming use.  Lewis has agreed to discontinue painting vehicles, working on wrecked vehicles and storing wrecked vehicles on the premises in exchange for a permit to use approximately 1/3 to 1/2 of the existing building area as a mini-market, also a use which is not permitted in the AR Zone.

Section 1200(2) of the Pennsbury Township Zoning Ordinance of 1972 is relevant to the disposition of this case.  That section provides:

A non-conforming use may be changed to another non-conforming use by grant of special exception only upon determination by the Zon-

_____

[1] Frederick C. Fiechter, Eleuthera C. Fiechter, Anthony C. Scott and Carol Clement.

[2] For the sale of groceries, cold sandwiches, coffee and doughnuts, but no cooking or service of food for consumption on the premises.

ing Hearing Board, after public hearing, that the proposed new use will be no more detrimental to its neighborhood and surroundings than is the use it is to replace. In determining relative detriment, the Zoning Hearing Board shall take into consideration, among other things, traffic generated; nuisance characteristics, such as emission of noise, dust and smoke; fire hazards; and hours and manner of operation.

The Board, after a hearing, determined that Lewis' "new use" would be no more detrimental than "the use it is to replace" and granted him a special exception. Appellants filed an appeal to the Court of Common Pleas, which, after receiving no further evidence, determined that the mini-market was a "substitution" for the "separate" use of storage and repair of wrecked vehicles and painting of vehicles.[3] The Court determined this was a valid change under Section 1200(2) and that the Appellants failed to establish that this changed use would be detrimental to the public health, safety and welfare. The Court therefore affirmed the Board.

We begin by noting our proper scope of review in this case: where the Common Pleas Court has affirmed the Board's action without taking additional evidence, our review is limited to a determination of whether the Board has abused its discretion or committed errors of law. *See, e.g., Food Bag, Inc. v.*

---

[3] The trial court's analysis of this case as a body shop to mini-market change of use separate from the continuing gas station use was in error. No evidence of record exists to support a conclusion of two separate valid non-conforming uses of the property prior to the requested special exception. The Board, in Finding of Fact No. 3 found the current use to be a "gasoline service station." Lewis, in his brief to this Court, does not argue on the basis of a twin use theory.

*Mahoning Township Zoning Board of Adjustment,* 51 Pa. Commonwealth Ct. 304, 414 A.2d 421 (1980).

Initially, we must determine what the prior use was and the specific nature of the change. There is, of course, no constitutionally protected right to change a non-conforming use to another use not permitted under the zoning ordinance. *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A.2d 539 (1962). Where the right to change to another non-conforming use is provided in a zoning ordinance, such a provision must be construed strictly so as to restrict non-conforming uses closely. *Hauser v. Borough of Catasauqua Zoning Hearing Board,* 20 Pa. Commonwealth Ct. 313, 317, 341 A.2d 566, 569 (1975). Furthermore, the right to change non-conforming uses does not generally include the right to retain a non-conforming use while adding another non-conforming use. *Hauser; Horninger v. Bethlehem Township Police Association,* 8 Pa. Commonwealth Ct. 85, 301 A.2d 433 (1973).

In the present case, Lewis contends that he has changed his property usage from a prior gasoline station-body shop use to a new gasoline station-mini-market use. In support of these definitions of his prior and desired uses, Lewis directs us to the case of *Lower Moreland Township v. Shell Oil Company & White,* 3 Pa. Commonwealth Ct. 259, 281 A.2d 201 (1971). Our reading of *Shell Oil,* however, does not lend support to Lewis' definition of a "use." In *Shell Oil,* we were presented with a situation in which a gasoline station, grocery store and beer distributorship, all non-conforming uses, were operated on the same property. The owner sought to delete the last two uses and change the operation to one large gasoline station. We there held that, where the zoning ordinance permitted a change of non-conforming use to a use of equal or more restricted classification under the ordinance and the prior uses were all of equal

classification, then the prior classification and the new classification were the same and thus a change would be permitted. *See Jackson v. Pottstown Zoning Board of Adjustment,* 426 Pa. 534, 233 A.2d 252 (1967). We do not believe *Shell Oil* stands for the proposition that a property's "use" is to be defined as the sum of its constituent uses.

The Board in this case, based on substantial evidence, found the prior use of this property to be that of a gasoline service station. The painting, repair and temporary storage of vehicles thus were mere incidents thereto.[4] While Lewis' intentions in this case seem laudatory, if we were to accept his definition of "use" we would be opening the door to the redefinition of all non-conforming uses in the broadest terms possible so as to "trade off" portions of what is in reality a single usage in order to acquire new usages still incompatible with the zoning district in which the property lies. This, we believe, would not comport with the Supreme Court's admonition that "[n]onconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law and the Constitution." *Hanna,* 408 Pa. at 312-13, 183 A.2d at 543. Therefore, we feel constrained to hold that the Board's decision to permit the "new use"[5] of a mini-market while continuing the prior service station use was improper as a matter of law where the ordinance only permits a change in usage. *Horninger.*

---

[4] If these activities were not elements of the service station use a reading of the record suggests that they would have been illegal uses after the area was zoned AR.

[5] Lewis has not argued that the market is an accessory use or an updating of his prior use. *See Gustin v. Zoning Hearing Board of Sayre Borough,* 55 Pa. Commonwealth Ct. 410, 423 A.2d 1085 (1980).

ORDER

The order of the Court of Common Pleas in the above-captioned matter, dated October 16, 1981, is hereby reversed.