640 A.2d 498

**David and Diane BLANCETT–MADDOCK, Appellants,**

**v.**

**CITY OF PITTSBURGH ZONING BOARD OF ADJUSTMENT, and City of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1993.

Decided April 5, 1994.

194

David Blancett–Maddock, pro se.

No appearance, for appellees.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

David and Diane Blancett–Maddock (objectors) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) which affirmed the decision of the Pittsburgh Zoning Board of Adjustment (Board) granting a special exception for the use of a portion of the subject property as a laundromat. We affirm.

The facts as recited by the trial court are restated as follows. The subject property is located at 1529 Brownsville Road in the City of Pittsburgh, in an R–4 Multiple Family Zoning District. A one-story nonconforming building is situated on the property. The building has housed a succession of nonconforming uses since at least 1936.

In 1987, the Board approved a special exception for the property to be converted from a furniture store (a nonconforming use) to an office for a general contractor (another nonconforming use). In 1991, the Board approved the front of the building as a beauty and tanning salon, but specifically denied occupancy of the rear of the building which previously included parking and storage areas.

The present petition was brought before the Board to allow a laundromat (a nonconforming use) to operate in the vacant rear portion of the property. A hearing was held before the Board on February 6, 1992. Prior to rendering a decision, the Board granted the owner of the property, Mr. Jan Hall, a continuance in order to downsize the proposed plan. A hearing on the modified plan was held on June 18, 1992, at which time several residents of the neighborhood appeared to object. The Board approved a special exception for the laundromat on August 21, 1992.

The Blancett–Maddocks, neighboring property owners who objected to the plans at both Board hearings, appealed the Board's final decision to the trial court. During the pendency of the appeal, the Board issued an amended decision specify-

ing that the laundromat hours of operation were to be from 9:00 a.m. to 6:00 p.m., Monday through Saturday, and from 10:00 a.m. to 6:00 p.m. on Sunday.

The trial court rejected the arguments raised on appeal and affirmed the Board. The objectors now appeal to this court.[1]

On appeal, the objectors present the following questions for our review: (1) whether the Board erred as a matter of law in granting a change from one nonconforming use to another nonconforming use while retaining the prior nonconforming use; and (2) whether the decision of the Board was an abuse of discretion and not supported by substantial evidence.

▆▆▆▆ Because no additional evidence was presented to the trial court in their review of the Board's findings, our scope of review is limited to a determination of whether the Board committed a manifest abuse of discretion or an error of law. *Searles v. Zoning Hearing Board, City of Easton*, 118 Pa.Commonwealth Ct. 453, 545 A.2d 476 (1988). A zoning hearing board abuses its discretion only if its findings of fact are not supported by substantial evidence. *Bilotta v. Haverford Township Zoning Board of Adjustment*, 440 Pa. 105, 270 A.2d 619 (1970).

The City of Pittsburgh Zoning Ordinance provides for the right to change from one nonconforming use to another within the R-4 zoning district by application of the exception set forth by section 937.05(b)(3), which provides:

### USE EXCEPTIONS

(b) Uses which are permitted only as special exceptions by the Board in conformity with the provisions of Chapter 909.

(3) Extension of a nonconforming use within a noncon-forming structure, or the *change of such use within a nonconforming structure* to a conforming use or *to anoth-*

---

1. Prior to argument before this court, the Zoning Board of Adjustment indicated its preference to rely on the opinion of the trial court in lieu of filing a brief. The City of Pittsburgh filed a notice of non-partic-ipation.

> *er nonconforming use that is determined by the Board to*
> *be no more detrimental to the neighborhood.*

(Emphasis added.) (*See* Section 909.06(b)(5).) City of Pittsburgh Zoning Ordinance, § 937.05(b)(3). Cross-reference to section 909.06(b)(5) provides:

### SPECIAL EXCEPTIONS

(a) Generally. Upon application, in accordance with the provisions of this Zoning Ordinance and the rules of procedure of the Board, the Board shall determine the reasonableness and propriety in particular cases of any one of the following special exceptions to the district regulations of this Zoning Ordinance....

(5) Extension of a nonconforming use within a nonconforming structure, or for the change of such use within a nonconforming structure to a conforming use or to another nonconforming use that is determined by the Board to be no more detrimental to the neighborhood....

City of Pittsburgh Zoning Ordinance, § 909.06.

 The terms of the ordinance govern the change from one nonconforming use to another and provide the parameters under which it must be considered. *Drucker v. Zoning Hearing Board, Borough of Wilkinsburg,* 124 Pa.Commonwealth Ct. 616, 556 A.2d 955 (1989). Under Pennsylvania law, an ordinance, including that which is at issue here, which permits a change from one nonconforming use to another which is "no more detrimental" to the neighborhood than the prior use in effect permits a change in the use, by special exception. *Martire v. Zoning Board of Adjustment, City of Pittsburgh,* 74 Pa.Commonwealth Ct. 255, 459 A.2d 1324 (1983).

 A special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled unless the zoning board determines, according to the standards set forth in the ordinance, that the proposed use would adversely affect the community. *East Manchester Township v. Dallmeyer,* 147 Pa.Commonwealth Ct. 671, 609 A.2d 604 (1992). Once an applicant for a special exception has established compliance with the specific objective requirements of

that exception as set forth in the ordinance, the objectors to the proposed special exception have the burden of persuasion and the duty to go forward with evidence that the general, non-specific requirements have not been fulfilled. *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980).

Here, the Board permitted a special exception change from a nonconforming contractor's business office, parking and storage to a beauty and tanning salon with one outdoor parking stall. The same landowner was later granted a special exception change for occupancy of the rear portion of the property in order to add a laundromat while retaining the beauty and tanning salon.

Before the trial court, the objectors argued that the plain language of the Ordinance mandates that the "detriment" to the neighborhood is to be determined by a comparison of the existing nonconforming use against that of the nonconforming use being substituted. In the present matter, the objectors maintained, the appropriate "detriment comparison" would therefore be a comparison between the relative detriment posed by a change in use from a beauty parlor/tanning salon (the existing use) to a laundromat. The objectors concluded that by this standard, the rear of the property must remain vacant, since there is no use imaginable which could be less detrimental to the neighborhood than a vacancy.

The trial court concluded that the objectors' theory was not equitable or faithful to the spirit of the Ordinance which seeks to promote legitimate uses of land. "[S]uch an approach would effectively deny Mr. Hall the use of a large portion of his property." (Trial court opinion at 4.)

Specifically, the trial court determined that the Board did not err in considering the property as a *whole* in assessing the propriety of the proposed change in use. The last time the property had been entirely utilized was from 1976 to 1990 when the front of the building was used as office space and the rear used for parking and storage. Since 1991, only the front of the store has been used and the rear has been vacant.

Therefore, in the trial court's opinion, the Board acted properly in weighing the cumulative effect of the beauty parlor/tanning salon against the last use to occupy the building as a whole. We agree.

On appeal, the objectors again propose the same theory of detriment comparison, adding that the prior use of the rear for parking could not be used in the determination of comparative detriment because it had been ruled abandoned by the same Board decision that granted the change from a nonconforming business office to a beauty parlor/tanning salon. The objectors maintain that the "incidental storage" use for the rest of the rear property was also improperly used as an element of the comparison.

 Upon review, we find that neither the Board nor the trial court erred in considering the property as a whole in assessing the proposed change in nonconforming use. As correctly noted by the trial court, the subject property had been entirely used as a nonconforming business use, employing twenty people, for an uninterrupted period of fourteen years ending in 1990. Only since 1991 has the rear of the property been vacant.

To weigh the detrimental effect of the laundromat use in the rear of the property against its last approved use (a parking lot), as the objectors urge, would be an inequitable approach given the history of the property's usage. Before the Board, the objectors presented their concerns that the increased demand for parking by a combined beauty parlor/laundromat use would have a detrimental effect on the neighborhood. However, the Board previously approved a twenty-employee business on the property which remained in operation for fourteen years, despite the traffic situation which the Board found to have consistently existed in the neighborhood. The laundromat proposes to employ one person.

In addition, the hours of operation granted for the contractor's office were Monday through Friday, 8:30 a.m. to 5:00 p.m. Comparatively, we see no more detriment to the neighborhood with the laundromat's requested hours of operation.

We conclude, therefore, that the objectors failed to meet their burden of establishing, by substantial evidence, that the proposed laundromat would be more detrimental to the neighborhood than the previous nonconforming uses which have occupied the entire subject property. The Board did not err in granting a change from one nonconforming use to another, nor were its findings unsupported by substantial evidence.

Accordingly, the order of the trial court is affirmed.

## ORDER

NOW, this 5th day of April, 1994, the order of the Court of Common Pleas of Allegheny County, dated March 19, 1993, at No. S.A. 3012–92, is hereby affirmed.

PELLEGRINI, J., did not participate in the decision in this case.